Levoy Jasper MEREDITH,
Petitioner-Appellant,

v.

STATE OF ARIZONA et al.,
Respondents-Appellees.

No. 74–1315.

United States Court of Appeals,
Ninth Circuit.

Sept. 30, 1975.

Levoy Meredith, in pro. per.

Stanley L. Patchell, Asst. Atty. Gen., Phoenix, Ariz., for respondents-appellees.

OPINION

Before DUNIWAY and HUFSTED-LER, Circuit Judges, and CONTI,* District Judge.

DUNIWAY, Circuit Judge:

Meredith's civil rights action (42 U.S.C. § 1983) was dismissed for failure

---

* The Honorable Samuel Conti, United State District Judge for the Northern District of California, sitting by designation.

to state a claim for relief, and he appeals.

## I. The Facts.

We assume, for present purposes only, that the allegations of Meredith's complaint are true. They are as follows:

Meredith is incarcerated in a state prison in Arizona. He has a medical history of emphysema. In the early morning of September 28, 1973, he asked to be excused from breakfast because he was suffering from an emphysema attack. Permission was denied, and he started to walk to the mess hall. When he was about 500 feet from the hall, his condition worsened. He asked correctional officer Miller the source of the order that he must attend breakfast despite his illness, and Miller answered that the warden had given the order and that he, Miller, intended to enforce it. Meredith complained about his difficulty in breathing, and Miller struck him in the solar plexus. According to the complaint, Miller's blow rendered him "totally handicapped." Thereupon, Miller ordered a junior officer to take Meredith to the isolation building and lock him up. Lieutenant Hall was nearby and ordered Miller to stop harassing Meredith and directed another officer to put Meredith in a wheelchair and take him to the hospital for emergency treatment, which was done. He was given four hours of oxygen therapy "to counteract the damage that had been done."

The incident was investigated by Associate Warden Burd, who concluded that the warden had issued no order requiring Meredith to attend meals while suffering from an attack of emphysema, that Miller had acted without authority in directing Meredith to attend breakfast on September 28, and that Meredith was not guilty of any infraction. Meredith sued Miller, Hall, Burd, Warden Card-well, prison physician Deputy, and the State of Arizona.

## II. A Claim under the Civil Rights Act is Stated.

Does the complaint, as liberally construed (*Haines v. Kerner,* 1972, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652), state facts bringing Meredith within 42 U.S.C. § 1983, which gives him an action against one who, under the color of state law and without due process deprives him of his constitutional right to "liberty," guaranteed by the Fourteenth Amendment?[1] We think that it does.

■ First, there is no doubt that Miller was acting in the course of his official duties. What he did was done "under color" of state law. *Gregory v. Thompson,* 9 Cir., 1974, 500 F.2d 59, 62. *See also Williams v. United States,* 1951, 341 U.S. 97, 99, 71 S.Ct. 576, 95 L.Ed. 774.

■ Second, it is now too late to argue that one who is subjected to an assault and battery by a person acting under color of state law can never have a claim for relief under § 1983. In *Gregory v. Thompson, supra,* 500 F.2d at 62, we squarely held that the right violated by an assault and battery is "the right to be secure in one's person, and is grounded in the due process clause of the Fourteenth Amendment." It is an aspect of the right to liberty.

The only arguable question is whether the particular assault and battery here alleged is such as to fall within § 1983. Heretofore, we have not tried to lay down guidelines as to what assaults and batteries committed by persons acting under color of state law fall within § 1983, and what assaults and batteries do not. Here we deal with a complaint by a prisoner against his custodians, involving the use of force in a setting in

---

1. 42 U.S.C. § 1983 specifically provides that:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

which force is sometimes both appropriate and unavoidable. We doubt that, even in that setting, it is possible to lay down a rule for all cases, and we shall not attempt to do so.

We find ourselves in general agreement with the views of Judge Friendly, speaking for the Second Circuit in *Johnson v. Glick,* 1973, 481 F.2d 1028, 1033:

. . . Certainly the constitutional protection is *nowhere nearly so extensive* as that afforded by the common law tort action for ' battery, which makes actionable any intentional and unpermitted contact with the plaintiff's person or anything attached to it and practically identified with it, see Prosser, Torts § 9 (4th ed. 1971); still less is it as extensive as that afforded by the common law tort action for assault, redressing "Any act of such a nature as to excite an apprehension of battery," *id.* § 10, at 38 [footnote omitted]. Although "the least touching of another in anger is a battery," [citation omitted], it is not a violation of a constitutional right actionable under 42 U.S.C. § 1983. The management by a few guards of large numbers of prisoners, not usually the most gentle or tractable of men and women, may require and justify the occasional use of a degree of intentional force. *Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.* In determining whether the constitutional line has been crossed, a court must look to such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm. [Emphasis added]

The foregoing language is predicated on the proposition that the Supreme Court's holding in *Rochin v. California,* 1952, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183, "points the way." *Rochin* found a violation of the Fourteenth Amendment, albeit for assault and battery occurring in a different context, in conduct that "shocks the conscience" (342 U.S. at 172, 72 S.Ct. 205), conduct which involves force that is "brutal" and "offensive to human dignity" (342 U.S. at 174, 72 S.Ct. 205). *See Johnson, supra,* 481 F.2d at 1033 and fn. 6.

None of our decisions requires that we adopt a position less restrictive, if that be the proper word, than that taken in *Johnson v. Glick,* quoted *supra.* In *Gregory v. Thompson, supra,* a justice of the peace left his desk in his courtroom in order to throw the plaintiff (aged 65) out, forced the plaintiff out through the door, then threw him to the floor, jumped on him and began to beat him. 500 F.2d at 61. *Allison v. Wilson,* 9 Cir., 1970, 434 F.2d 646, held that the plaintiff prisoner stated a claim under § 1983 by alleging that he had been "physically abused" by two prison guards on two separate occasions (434 F.2d at 647), and that alleging that one guard, "after saying 'I will show you some new rules,' slammed a steel door shut, hitting Allison on the back, is a sufficient allegation of intentional misconduct." (*Id.* at 647–48). *Brown v. Brown,* 9 Cir., 1966, 368 F.2d 992, *cert. den.,* 1966, 385 U.S. 868, 87 S.Ct. 133, 17 L.Ed.2d 95, held sufficient a complaint in which the plaintiff alleged that he had been kicked and beaten by state officers in an effort to compel his confession of involvement in criminal activities, *Dodd v. Spokane County,* 9 Cir., 1968, 393 F.2d 330, held that a complaint stated a civil rights claim when the plaintiff prisoner alleged that he was beaten by six guards as "punishment" for refusing to testify falsely in a criminal trial. *Wiltsie v. Calif. Dept. of Corrections,* 9 Cir., 1968, 406 F.2d 515, held that a civil rights claim was stated by a prisoner who alleged that six guards had beaten him with fists and billy clubs on his head and that he might suffer permanent disability as a result. Finally, the allegation that a plaintiff prisoner had been "beat, kicked, knocked, stomped, thrashed, teargassed and cursed" by his custodians was

held to state a § 1983 claim in *Allison v. Calif. Adult Authority,* 9 Cir., 1969, 419 F.2d 822.

None of these cases held that the constitutional protection of the Fourteenth Amendment due process clause is synonymous with that afforded by the common law against the torts of assault and battery. And one can only surmise what analytical principles were applied. *Cf. Johnson v. Glick, supra,* 481 F.2d at 1033, conjecturing that the reasoning of this circuit in *Wiltsie v. California Department of Corrections, supra,* was the same as that of the Fifth Circuit in *Tolbert v. Bragan,* 1971, 451 F.2d 1020, and the Seventh Circuit in *Collum v. Butler,* 421 F.2d 1257.

■ We conclude that, when construed liberally as *Haines v. Kerner, supra,* requires, the complaint does state a claim under § 1983 as construed in *Johnson v. Glick, supra.* It alleges an unprovoked assault and battery by a guard upon a prisoner known by the guard to be suffering from an attack of emphysema, by striking him in the solar plexus, hard enough that the "attack rendered the patient plaintiff totally handicapped." We think that as described in the complaint, Miller's conduct can be fairly characterized as intentional, unjustified, brutal, and offensive to human dignity. Under *Johnson v. Glick, supra,* conduct that can be so described violates the victim's constitutional right to due process. We need not decide whether conduct that is less reprehensible would also violate that right. Whether Meredith can prove his allegations is another matter upon which we express no opinion.

### III. *Other Questions.*

■ The dismissal of Meredith's claims against the state of Arizona and prison physician Deputy must be affirmed. Meredith may not sue the State as such, and he has not plausibly alleged any facts supporting a claim against Dr. Deputy.

■ Meredith's claims against Warden Cardwell, Associate Warden Burd, and Correctional Officer (Lieutenant) Hall, if he has any, must be based on the doctrine of *respondeat superior.*[2] He states no facts indicating that any of them personally did anything that violated any of Meredith's rights. Whether the doctrine is available in this action is a question of state law. (*See Hesselgesser v. Reilly,* 9 Cir., 1971, 440 F.2d 901, 902–03.) In reevaluating the pleadings on remand, the district court will have an opportunity to consider whether *respondeat superior* is applicable under Arizona law;[3] if it should decide that *respondeat superior* is applicable, it will permit amendment to the complaint to state the facts, if any, upon which Meredith claims that vicarious liability of Lieutenant Hall, Associate Warden Burd, and Warden Cardwell is based.

It was not error to set aside the defendants' default in filing an answer.

The judgment in favor of the state of Arizona and of defendant Deputy is affirmed. The judgments in favor of defendants Miller, Hall, Burd and Cardwell are reversed and the case is remanded for further proceedings.

CONTI, District Judge (concurring in part, dissenting in part):

I agree with the court's holding that the district court correctly dismissed appellant's claims against the State of Arizona and the prison staff physician, Dr. Deputy.

I respectfully dissent, however, from the reversal of the order of the district

---

2. It is not clear whether Lieutenant Hall was Miller's superior. Plaintiff's complaint reveals that Hall countermanded Miller's instruction that plaintiff be taken to the isolation building and locked up. On remand the district court will have an opportunity to inquire into this issue.

3. *See, e. g.,* 12 Ariz.Rev.Stat. § 38-463 (West 1974); *Dogarin v. Connor,* 1967, 6 Ariz.App.

473, 433 P.2d 653, 656–57, 658. Liability for punitive damages under the doctrine of *respondeat superior* lies only if the superior "has directed, participated in, acquiesced or ratified [the acts of the offending subordinate]." *Boies v. Cole,* 1965, 99 Ariz. 198, 205, 407 P.2d 917, 922; *Dogarin v. Connor, supra,* 433 P.2d at 659–60.

court insofar as that order holds that appellant has not stated a claim for relief against Correctional Officer Miller, cognizable under 42 U.S.C. § 1983. Similarly, I disagree with the majority's decision to remand this case to the district court for further consideration of whether appellant has stated a claim against Warden Cardwell, Associate Warden Burd, and Correctional Officer Hall pursuant to the doctrine of *respondeat superior.* In short, I am of the opinion that the district court was correct in dismissing the entire complaint for failure to state a claim cognizable under 42 U.S.C. § 1983.

Judge Duniway's enunciation of the legal standard applicable here and his reference to *Johnson v. Glick* (2d Cir. 1973), 481 F.2d 1028, reflect my opinion of the law. However, after careful consideration of the complaint and notwithstanding the requirements of *Haines v. Kerner,* 1972, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652, I cannot conclude, as Judge Duniway does, that the complaint states a claim for relief under 42 U.S.C. § 1983.